**THE COOPERSMITH LAW FIRM**
STEVEN T. COOPERSMITH (SBN 184646)
555 West Beech Street, Suite 230
San Diego, California 92101
Telephone: (619) 238-7360
Facsimile: (619) 785-3357
Email: stc@stevecoopersmithlaw.com

Attorneys for Plaintiff
THOMAS EDWARD HOM, TRUSTEE
OF THE ALLEN ERNEST HOM TRUST
DATED AUGUST 19, 1992

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS EDWARD HOM, TRUSTEE OF THE ALLEN ERNEST HOM TRUST DATED AUGUST 19, 1992,<br><br>Plaintiff,<br><br>v.<br><br>TFC HOLDING COMPANY, a Delaware corporation; TOMATOBANK, a California corporation; RBB BANCORP, a California corporation; and ROYAL BUSINESS BANK, a California corporation,<br><br>Defendants. | CASE NO.: **'17CV1109 DMS MDD**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **VIOLATION OF 15 USC § 78j and 17 C.F.R. § 240.10b-5**<br>2. **VIOLATION OF 15 USC §78n and 17 C.F.R. §240.14e-3**<br>3. **COMMON LAW FRAUD AND DECEIT**<br>4. **BREACH OF FIDUCIARY DUTY**<br>5. **CONSTRUCTIVE FRAUD**<br>6. **CONSTRUCTIVE TRUST**<br>7. **UNFAIR BUSINESS PRACTICES**<br><br>[Jury Trial Demanded pursuant to FRCP Rule 38(b).] |

Plaintiff THOMAS EDWARD HOM, TRUSTEE OF THE ALLEN ERNEST HOM TRUST DATED AUGUST 19, 1992 ("**Plaintiff**") respectfully files this Complaint against Defendants TFC HOLDING COMPANY, TOMATOBANK, RBB BANCORP, and ROYAL BUSINESS BANK ("**Defendants**") as follows:

## I.   INTRODUCTION

1.   This is a case alleging securities fraud, and other related causes of action, arising from Defendants' misrepresentations and failure to disclose their

intent to enter into a merger prior to and while extending a tender offer to TFC Holding Company's shareholders. Upon information and belief, TFC Holding Company's officers and directors took advantage of insider information and their position of trust and confidence to issue a tender offer to TFC Holding Company's shareholders at $11.00 per share. Nearly all of TFC Holding Company's officers and directors failed to tender any shares based on insider information regarding a potential merger, knowing that the value of the remaining shares would increase with a merger announcement.[1]

2.  By encouraging shareholders to tender their shares while not tendering their own shares, TFC Holding Company's officers and directors increased their ownership interest in TFC Holding Company, ensuring that they would have increased voting power to approve any potential mergers in the future.

3.  Five of TFC Holding Company's executive officers had preexisting employment agreements which provided change of control payments (i.e. "parachute payments") if their employment was terminated within twelve months of the date of the merger.

4.  Plaintiff was unaware of the Defendants' intent to enter into a merger until approximately December 18, 2015, when TFC Holding Company issued a Proxy Statement regarding the merger with RBB Bancorp and Royal Business Bank. Accordingly, Plaintiff brings this action against Defendants and Defendants' related companies, to recover the funds that were fraudulently and unlawfully taken from it.

## II.  PARTIES

5.  Plaintiff Thomas Edward Hom, Trustee of the Allen Ernest Hom Trust, dated August 19, 1992 (the "AEH Trust"), is the trustee of a trust formed in

---

[1] Lichen Herman, President, tendered 2% of her shares during the tender offer. Director Mark Rubin sold his shares although it is unknown at this time whether this was a separately negotiated deal.

California. The AEH Trust is managed in San Diego and was at all relevant times a shareholder of Defendant TFC Holding Company. Dr. Allen Hom, the original trustor of the AEH Trust, died in December 2014, after a period of declining health and dementia causing him to be incapacitated – facts well known by Defendants.

6. Defendant TFC Holding Company at all relevant times to this dispute was a registered bank holding company incorporated in Delaware. TFC Holding Company had one bank subsidiary, TomatoBank.

7. Defendant TomatoBank at all relevant times was a California state-chartered bank incorporated in California which provided a full range of banking services to individual and corporate customers throughout Southern California. TFC Holding Company was the sole shareholder of TomatoBank.

8. TFC Holding Company and TomatoBank (hereinafter collectively "TFC") merged with RBB Bancorp and Royal Business Bank (hereinafter collectively "RBB") on or about January 20, 2016, with RBB Bancorp as the surviving company. TFC has been named as a party in this lawsuit as it is unclear whether RBB has agreed to assume TFC's liabilities under the terms of the merger agreement.

9. Defendant RBB Bancorp is a registered bank holding company incorporated in California.

10. Defendant Royal Business Bank is a wholly-owned subsidiary of RBB Bancorp and is a California state-chartered bank incorporated in California. Royal Business Bank provides banking services to business communities in Los Angeles, Orange, and Ventura counties, and Clark County, Nevada. According to its website, Royal Business Bank claims that it is "a Chinese-American business-oriented bank with an emphasis on Chinese-American business banking."

### III. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, as the case primarily involves a cause of action for violations of the Securities and

Exchange Act of 1934, a law of the United States. This court may exercise supplemental jurisdiction over the state law claims that are transactionally related to this federal claim such that they form part of the same case or controversy, pursuant to 28 U.S.C. §1367(a).

12. Venue is proper pursuant to 28 USC §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Specifically, TFC knowingly sent both its tender offer and merger voting materials to the AEH Trust at its primary and central address of record in La Jolla, California, within this judicial district, and all business related to both the sale of the AEH Trust shares through the tender offer and the sale of the AEH Trust shares as a result of the ultimate merger of TFC with RBB took place in La Jolla, California, within this judicial district. In addition, TFC and TomatoBank management visited the AEH Trust's central business address in La Jolla, California, within this district, to conduct business related to the facts alleged in this action.

## IV.   RELEVANT FACTS

13. At the decision of TFC's Board of Directors, on January 16, 2015, TFC made a tender offer to purchase (the "Offer to Purchase") for cash up to 1,000,000 shares of common stock at the purchase price of $11.00 per share. On January 12, 2015, the last trading day before the announcement of the Offer, the last reported sale price of a share was $11.10.

14. Pursuant to the Offer to Purchase, 1,000,000 shares represented approximately 15.05% of TFC's outstanding common stock as of December 31, 2014. TFC's Offer to Purchase advised that the offer would be held open until February 17, 2015 unless it was extended. The Offer to Purchase is hereby incorporated by reference.

15. The Offer to Purchase stated that the Board of Directors approved the Offer. **The Offer further provided, "We have been advised some of our**

**directors or executive officers may tender shares pursuant to this Offer."**

16. **Per the Offer to Purchase, the purpose of the tender offer was to increase shareholder value, and the Board of Directors stated that they believed the tender offer was one method of accomplishing this.** The Offer to Purchase advised that the reduction in the number of shares outstanding should result in an increase of TFC's earnings per share and return on equity.

17. The Offer to Purchase stated in pertinent part as follows:

> We currently have no plans, proposals or negotiations underway that relate to or would result in:
>
> - Any extraordinary transaction, **such as a merger, reorganization** or liquidation, involving us or any of our subsidiaries;
> - Any purchase, sale or transfer of an amount of our assets or any of our subsidiaries' assets which is material to us and our subsidiaries, taken as a whole;
> - Any material change in our capitalization, corporate structure or business;
> - Any material change in our present Board of Directors or management…
> - Any material change in our corporate structure or business;
>
>   …
>
> Notwithstanding the foregoing, we consider from time to time and may in the future consider opportunities to take such actions.

(TFC Holding Company's Offer to Purchase [emphasis added].)

18. Before the tender offer, the AEH Trust was the largest single shareholder of TFC, holding 9.97% of TFC's shares. Prior to Trustor Dr. Allen Hom's ("Dr. Hom") death on December 4, 2014, TFC Board members and TomatoBank staff regularly visited Dr. Hom at his home. Given TFC Board

members and TomatoBank staff regularly and directly interacted with Dr. Hom after his stroke in 2011, TFC, its agents and/or assigns, were fully aware of Dr. Hom's 2011 stroke and incapacitation.

19. Further, TFC had personal knowledge of Dr. Hom's troubled portfolio of limited cash, delinquent taxes, and vacant properties with underwater mortgages. On information and belief, TFC knew that after Dr. Hom's death, the AEH Trust would need cash in order to pay off outstanding debts. Indeed, upon information and belief, TFC timed its January 2015 tender offer to occur just a month after Dr. Hom's death.

20. As such, the AEH Trust wanted to understand more about TFC's reasons for the tender offer. On January 21, 2015, William Newbern – a representative for the AEH Trust – spoke over the phone with Chris Chan, Executive Vice President and Chief Financial Officer of TFC.  During that phone call Mr. Newbern asked Mr. Chan directly if there were any other banks interested in purchasing or merging with TFC and additionally asked if the TFC Board intended to sell TFC in the future.

21. Mr. Chan told Mr. Newbern that although TFC had held discussions with other banks in the past,  no other bank had expressed interested in purchasing or merging with TFC at terms acceptable to the Board, and further, and that the Board had no plans to sell and had not discussed selling TFC in the future. TFC did not permit a representative of the AEH Trust to sit on the Board – despite requests from Dr. Hom's family for a Board seat – and so Mr. Newbern had no way to independently verify Mr. Chan's statement regarding any future sales of TFC.

22. The AEH Trust reasonably relied on the representations in the Offer to Purchase, and in response to the tender offer tendered 384,928 shares at $11.00 per share.

23. On December 18, 2015, TFC issued a proxy statement (the "Proxy Statement") to its shareholders notifying them of a special meeting on January 20,

COMPLAINT FOR DAMAGES
6

2016 to vote on a proposed merger in which TFC would be merged with and into RBB Bancorp with RBB Bancorp as the survivor. The Proxy Statement is hereby specifically incorporated by reference.

24. Per the Proxy Statement, the outstanding shares of TFC's common stock would be converted into the right to receive between approximately $15.00 and $15.50 in cash per share.

25. According to the Proxy Statement, the Issuer Tender Offer ("ITO") was commenced on January 16, 2015 and was completed on March 3, 2015. More than 1,000,000 shares were tendered as part of the ITO and TFC prorated the shares tendered.

26. TFC followed the completion of the ITO by informing the shareholders that TFC would acquire up to an additional 500,000 shares on an opportunistic basis, through privately negotiated transactions. In March and April 2015, TFC acquired another 98,748 shares of common stock at a price of $11.00 per share.

27. Upon information and belief, before and during the period the tender offer was extended to shareholders, TFC's management had an intent to use the tender offer to acquire more shares in order to approve a merger with another financial institution. Indeed, upon information and belief, TFC had an intent to merge with one or more financial institutions, including RBB Bancorp and Royal Business Bank. Defendants made material misrepresentations that there was no intent to merge and failed to disclose those facts.

28. Defendants made these material misrepresentations and omissions in order to deceive, defraud, and/or manipulate TFC's shareholders, including the AEH Trust, into tendering their shares at a lower price, knowing that the value of the shares would increase once merger negotiations were announced.

29. TFC's board of directors used insider information that TFC planned to be engaged in merger negotiations in order to obtain shares from the AEH Trust

and other shareholders by way of a tender offer, while not tendering their own shares. TFC thus decreased the amount of outstanding shares and eliminated the AEH Trust's position as the largest shareholder, while increasing TFC's board of director's ownership interest in TFC. Upon information and belief, TFC's board of directors issued the tender offer with intent to increase their ownership interest in TFC and use their consolidated voting power to increase their chances of approving merger agreement – ultimately with RBB – to sell their shares at a significantly higher value.

30. Five executive officers at TFC had preexisting employment agreements which provided for change of control payments (i.e., "parachute payments") if their employment was terminated within twelve months of the date of a merger. The change of control payment varied per officer, and ranged between $180,000 and $260,000 upon completion of the merger. This provided a significant personal financial motivation for each of these executives to want to vote for and seek a merger with another financial institution.

31. On January 20, 2016, the merger agreement was approved between TFC, TomatoBank, RBB and Royal Business Bank, pursuant to which RBB Bancorp was the surviving company.

## FIRST CAUSE OF ACTION
**(Securities Fraud - Violations of 15 USC §78j and 17 C.F.R. §240.10b-5 – against all Defendants)**

32. The AEH Trust realleges and incorporates by reference the allegations of Paragraphs 1 through 26 of the Complaint as if fully set forth herein.

33. 15 USC §78j of the Securities Exchange Act of 1934 ("Section 10(b)") provides:

> It shall be unlawful for any person, directly or indirectly, by the use   of any means or instrumentality of interstate commerce or of the mails…

> (b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered… any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

§240.10-b5 of Title 17 of the Code of Federal Regulations ("Rule 10b-5") provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) to employ any device, scheme, or artifice to defraud;
>
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

34. 15 USC §78(c)(10) ("Section 3(10)") of the Securities Exchange Act of 1934 defines the term "security" to mean "any note" or transactions constituting an "investment contract."

35. As alleged herein, Defendants violated Section 10(b) and Rule 10b-5, by using the mails, email, telephone, and other instruments of interstate commerce, to conspire to employ a device, scheme or artifice to defraud the AEH Trust out of

its money in the connection with the sale of securities. Specifically, TFC made material misrepresentations in the Offer to Purchase that TFC had no plans to engage in merger negotiations.

36. TFC and its board of directors knowingly and intentionally misrepresented and failed to disclose that TFC planned to be engaged in merger negotiations in order to deceive, defraud, and/or manipulate TFC's shareholders, including the AEH Trust, into tendering their shares at $11.00 per share.

37. TFC's board of directors used insider information that TFC planned to be engaged in merger negotiations, to obtain shares from shareholders, including the AEH Trust, by way of a tender offer, while not tendering their own shares, thus increasing the board's ownership interest in TFC. TFC's board of directors used their increased ownership interest and voting power to ultimately approve the merger with RBB and to sell their shares at a significantly higher value.

38. Accordingly, TFC conspired with RBB to make untrue statements, and failed to state material facts necessary to make statements made not misleading, in connection with the sale of the securities, in violation of Section 10(b) and Rule 10b-5. Given what TFC's officers and directors knew about the intent to engage in premerger negotiations by virtue of their position as board members, TFC knew that the statements in the Offer to Purchase were false when made, and knew that TFC was omitting statements of material fact that were necessary to make TFC's statements to its shareholders, including the AEH Trust, about the tender offer not misleading.

39. The AEH Trust reasonably relied upon the misrepresentations and omissions of material facts made by TFC as a result of the fiduciary relationship of trust and confidence held by the AEH Trust as a shareholder with TFC's board of directors. The AEH Trust did not become aware of TFC and RBB's actions constituting violations of Section 10(b) and Rule 10b-5 until December 18, 2015, when the AEH Trust was informed of the merger between TFC and RBB by way of

the Proxy Statement sent to TFC's shareholders.

40. As a result of TFC's and RBB's violations of Section 10(b) and Rule 10b-5, the AEH Trust has suffered damages, in amount subject to proof at trial. Given the oppressive and malicious nature of Defendants actions as described above, the AEH Trust is also entitled to punitive damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
**(Securities Fraud - Violations of 15 USC §78n and 17 C.F.R. §240.14e-3 – against all Defendants)**

41. The AEH Trust realleges and incorporates by reference the allegations of Paragraphs 1 through 36 of the Complaint as if fully set forth herein.

42. 15 USC §78n of the Securities Exchange Act of 1934 ("Section 14(e)") provides:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

§ 240.14e-3 of Title 15 of the Code of Federal Regulations ("Rule 14e-3") provides:

> (a) If any person has taken a substantial step or steps to commence, or has commenced, a tender offer (the "offering person"), it shall constitute a fraudulent, deceptive or manipulative act or practice within the

> meaning of section 14(e) of the Act for any other person who is in possession of material information relating to such tender offer which information he knows or has reason to know is nonpublic and which he knows or has reason to know has been acquired directly or indirectly from:
>
> (1) The offering person,
> (2) The issuer of the securities sought or to be sought by such tender offer, or
> (3) Any officer, director, partner or employee or any other person acting on behalf of the offering person or such issuer, to purchase or sell or cause to be purchased or sold any of such securities or any securities convertible into or exchangeable for any such securities or any option or right to obtain or to dispose of any of the foregoing securities, unless within a reasonable time prior to any purchase or sale such information and its source are publicly disclosed by press release or otherwise.

43. TFC's officers and directors were in possession of material, nonpublic information by way of their position on TFC's board of directors regarding TFC's intent to enter into premerger negotiations.

44. TFC's officers and directors had a duty to disclose their intent to enter into premerger negotiations or abstain from trading in the context of the tender offer. TFC's officers and directors breached this duty when they extended the tender offer to TFC's shareholders while misrepresenting and failing to disclose TFC's intent to enter into premerger negotiations.

45. TFC's officers and directors knew or had reason to know that they had insider non-public material information regarding TFC's intended merger negotiations by way of their position on TFC's board of directors.

46. Substantial steps were taken to commence the tender offer by TFC's board of directors who issued an Offer to Purchase to TFC's shareholders which stated that TFC had "no plans, proposals or negotiations underway that relate to or

1  would result in" a merger.

2  47.  The tender offer was completed, reducing the number of outstanding
3  shares. TFC's board of directors did not tender any of their shares in the tender
4  offer based on the material nonpublic information available to them regarding the
5  merger negotiations.

6  48.  TFC's officers and directors used material nonpublic information to
7  issue the tender offer and obtain shares from TFC's shareholders at a low per share
8  price. TFC's board of directors did not tender any of their own shares in the tender
9  offer based on the material nonpublic information available to them as officers and
10 directors. TFC's board of directors then used their increased voting power
11 following the tender offer to approve the merger with RBB and sold their shares at
12 an increased value.

13 49.  By reason of the conduct described above, TFC directly or indirectly
14 violated Section 14(e) of the Exchange Act and Rule 14e-3 thereunder.

## THIRD CAUSE OF ACTION
**(Common Law Fraud and Deceit – against all Defendants)**

17 50.  The AEH Trust realleges and incorporates by reference the allegations
18 of Paragraphs 1 through 45 of the Complaint as if fully set forth herein.

19 51.  For the purpose of inducing TFC's shareholders, including the AEH
20 Trust, to tender shares, and with the intent to deceive the AEH Trust, TFC and RBB
21 conspired to employ a scheme to defraud TFC's shareholders out of their money.

22 52.  Specifically, and as alleged above in detail, TFC and RBB conspired to
23 misrepresent that TFC had no plans to engage in merger negotiations. In issuing the
24 tender offer to TFC's shareholders, including the AEH Trust, TFC failed to disclose
25 its knowledge that TFC planned to engage in merger negotiations with RBB and/or
26 other financial institutions which would affect the price of the shares.

27 53.  Although TFC's board knew that TFC planned to engage in premerger
28 negotiations, TFC's board continued to misrepresent and fail to disclose the

potential of any merger prior to or during the period of the tender offer was open.

54. At the time TFC made these misrepresentations and omissions and participated in these fraudulent actions, it knew them to be false and/or fraudulent, and intended to defraud the AEH Trust, and to induce reliance by the AEH Trust upon their fraudulent words and deeds.

55. The AEH Trust justifiably relied, to its detriment, upon TFC's statements and actions, and as a direct result of TFC's words and deeds as alleged herein, the AEH Trust tendered shares in response to the tender offer and suffered damages, in an amount to be proven at trial.

56. Given the oppressive and malicious nature of TFC's actions as described above, the AEH Trust is also entitled to punitive damages, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
**(Breach of Fiduciary Duty– Against Defendants TFC Holding Company and TomatoBank)**

57. The AEH Trust realleges and incorporates by reference the allegations of Paragraphs 1 through 52 of the Complaint as if fully set forth herein.

58. TFC's officers and directors entered into a fiduciary relationship with the AEH Trust by virtue of their position on the board of directors to represent the interests of TFC's shareholders, including the AEH Trust. TFC's officers and directors owed the AEH Trust fiduciary duties of fidelity, trust, loyalty, honesty, and due care, and were required to deal with and carry out their duties and responsibilities in a fair, just and equitable manner and to work solely in the best interests of TFC's shareholders, including the AEH Trust.

59. In their role as the representatives of TFC's shareholders, TFC's officers and directors engaged in the conduct described herein in breach of their fiduciary duties to the AEH Trust.

60. As a direct result of TFC's board of directors' breach of fiduciary

1  duties, the AEH Trust has suffered damages in an amount to be proven at trial.

2      61.    Given the oppressive and malicious nature of TFC's actions as described above, the AEH Trust is also entitled to punitive damages, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Constructive Fraud– against TFC and TomatoBank)

62.    The AEH Trust realleges and incorporates by reference the allegations of Paragraphs 1 through 57 of the Complaint as if fully set forth herein.

63.    TFC's officers and directors entered into a fiduciary relationship with the AEH Trust by virtue of their position on TFC's board of directors to represent the interests of TFC's shareholders, including the AEH Trust.

64.    As alleged herein, TFC's officers and directors possessed information prior to the tender offer and/or during the period the tender offer was open regarding TFC's intent to enter into premerger negotiations with RBB and/or other financial institutions. Such information was material to the AEH Trust's interests and investments in TFC and the AEH Trust's decision to tender shares.

65.    TFC knew or should have known that the information they possessed regarding TFC's plan to enter into premerger negotiations was material to the AEH Trust's interests, and yet TFC misrepresented and failed to disclose this material information to the AEH Trust.

66.    As a direct result of TFC's non-disclosure, the AEH Trust has suffered damages, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Constructive Trust –- against all Defendants)

67.    The AEH Trust realleges and incorporates by reference the allegations of paragraphs 1 through 62 of the Complaint as if fully set forth herein.

68.    As alleged herein, TFC fraudulently obtained assets of the AEH Trust

by making material misrepresentations and omissions to obtain the AEH Trust's shares through the tender offer, and converted the AEH Trust's shares to personal use. RBB had knowledge of, agreed to, and conspired with TFC in defrauding TFC's shareholders. To the extent any of these assets were transferred to TFC and RBB, these defendants have no legal or equitable right, claim or interest therein.

69. To the extent that Defendants are in the possession of any of the AEH Trust's assets fraudulently obtained by Defendants, Defendants are an involuntary trustee, holding said assets and profits there from in constructive trust for the AEH Trust.

70. As such, Defendants have a duty, as constructive trustee, to convey to the AEH Trust any and all assets in its possession fraudulently obtained by them.

**SEVENTH CAUSE OF ACTION**
**(Unfair Business Practices- Violations of Business and Professions Code §17200, *et seq*. –- against all Defendants)**

71. The AEH Trust realleges and incorporates by reference the allegations of Paragraphs 1 through 66 of the Complaint as if fully set forth herein.

72. The Unfair Business Practices Act (often known as the Unfair Competition Law) (the "UCL"), California Business and Professions Code § 17200, *et seq.*, defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

73. Defendants' actions as described herein constitute unfair and fraudulent business acts and practices, in that they conspired together to employ a scheme to defraud the AEH Trust out of its money, by: (1) using TFC's board of directors' position of trust and confidence with the AEH Trust, as a shareholder, to convince the AEH Trust to tender its shares at a price of $11.00 per share, (2) misrepresenting to the AEH Trust that TFC had no plans to engage in merger negotiations, when in fact TFC planned to be engaged in merger negotiations with RBB and/or other financial institutions, which would increase the value of the

shares, and (3) failing to disclose to the AEH Trust that TFC was engaged in or planned to be engaged in merger negotiations with RBB and/or other financial institutions.

74. Furthermore, Defendants' actions as described herein constitute unlawful business acts, in that Defendants conspired to employ a device, scheme or artifice to defraud the AEH Trust out of its money, and made misrepresentations and omissions of material fact, in the connection with the purchase of securities from the AEH Trust. Defendants committed these unlawful business acts in violation of Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 and Rule 10b-5 and Rule 14e-3 of the Code of Federal Regulations.

75. Therefore, the AEH Trust is entitled to a full restitution of moneys paid to Defendants, in an amount to be proven at trial, plus interest.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Compensatory damages in excess of $1,500,000.00, according to proof;
2. Interest thereon at the legal rate;
3. Punitive damages;
4. Imposition of a constructive trust;
5. For reasonable attorneys' fees, to the extent allowed by law;
6. For costs of suit; and
7. For such additional and further relief that the Court deems just and proper.

//
//
//
//

## JURY DEMAND

Plaintiff demands jury trial, pursuant to Federal Rule of Civil Procedure 38(b).

DATED: May 31, 2017     **THE COOPERSMITH LAW FIRM**

By: /s/ Steven T. Coopersmith
STEVEN T. COOPERSMITH
Attorneys for Plaintiff